```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
                                                                 :
JOYSUDS, LLC,                                                    :
                                                                 :
                                Plaintiff,                       :
                                                                 :      22 Civ. 3781 (JPC) (OTW)
                -v-                                              :
                                                                 :      OPINION AND ORDER
N.V. LABS, INC. d/b/a REFORMA GROUP,                             :
                                                                 :
                                Defendant.                       :
                                                                 :
-----------------------------------------------------------------X
```

JOHN P. CRONAN, United States District Judge:

Defendant N.V. Labs, Inc. d/b/a Reforma Group ("Reforma") moves to amend its counterclaims against Plaintiff JoySuds, LLC ("JoySuds") to add a counterclaim alleging fraud. The Court grants the motion, but restricts that counterclaim to Reforma's fraud theory concerning future lines of business with JoySuds.

## I. Background

The Court has previously discussed the facts of this case, as alleged by the parties, in detail in two prior Opinions dated March 31, 2023, *JoySuds, LLC v. N.V. Labs, Inc.*, No. 22 Civ. 3781 (JPC), 2023 WL 2744537 (S.D.N.Y. Mar. 31, 2023); *JoySuds, LLC v. N.V. Labs, Inc.*, No. 22 Civ. 3781 (JPC), 2023 WL 2746772 (S.D.N.Y. Mar. 31, 2023) ("MTD Opinion"), the latter of which denied JoySuds's motion to dismiss Reforma's counterclaims for breach of contract and granted that motion with respect to Reforma's counterclaim for breach of the implied covenant of good faith and fair dealing. The Court assumes familiarity with those Opinions and the facts alleged in

Reforma's original counterclaims, and discusses here only those new facts alleged in Reforma's proposed amended counterclaims to the extent relevant to the motion to amend.[1]

In essence, Reforma's breach of contract counterclaims allege that JoySuds breached the Supply Agreement between the parties by failing to pay invoices (the "Payment Breach Counterclaim"), by dealing with other manufacturers (the "Exclusivity Breach Counterclaim"), and by failing to pay for residual materials and finished products upon the termination of the Supply Agreement (the "Materials Breach Counterclaim"). Dkt. 38 at 31-32; *see* MTD Opinion at *6, 11-12.[2] Reforma now seeks to amend those counterclaims to add a counterclaim for fraud, which would allege that JoySuds orchestrated a scheme to secretly replace Reforma with other suppliers while making false statements and promises, including expressing an interest in pursuing future lines of business together, to induce Reforma to continue manufacturing and shipping Product until JoySuds was ready to drop Reforma and leave its bills unpaid. Dkt. 143-1 ("Proposed Amended Counterclaims") ¶¶ 99-179, 198-204.

Specifically, Reforma seeks to further allege the following. In September 2021, JoySuds was working on engaging a new supplier to provide Product. *Id.* ¶ 102. By October 2021, internal materials indicated that JoySuds would have a new supplier at least partially in place by November 2021. *Id.* ¶ 104. Reforma had no knowledge of this and "expected that it would continue manufacturing all SKUs for JoySuds through the life of the Supply Agreement." *Id.* ¶ 105. In

---

[1] Capitalized terms which are undefined in this Opinion and Order take their meaning from the MTD Opinion. The following facts are taken from the Proposed Amended Counterclaims and are assumed to be true only for purposes of framing the issues relevant to Reforma's motion to amend. *See Red Rock Sourcing LLC v. JGX, LLC*, No. 21 Civ. 1054 (JPC), 2023 WL 3736442, at *1 n.1 (S.D.N.Y. May 31, 2023).

[2] In the MTD Opinion, the Court dismissed Reforma's counterclaim for breach of the implied covenant of good faith and fair dealing as duplicative of its breach of contract counterclaims. MTD Opinion at *14-15.

January 2022, Reforma contacted JoySuds seeking projections of requirements for the second quarter of 2022.  *Id.* ¶ 123.  Despite in fact intending to "ramp down" its purchases from Reforma, JoySuds responded to Reforma's inquiry by indicating "that the forecasts would be updated later in the month, and said, 'Until then, just assume QTR 1 repeats.'"  *Id.* ¶¶ 117, 125.  Additionally, in response to a request by Reforma to provide information about the processing of payments, as JoySuds had fallen behind on payments, JoySuds told Reforma that its "systems" were simply "behind," yet at the same time internally communicating that this was not the case.  *Id.* ¶¶ 129-132.  According to Reforma, JoySuds never intended to make the payments at all.  *Id.* ¶ 133.  Similarly, later in 2022, JoySuds's president told Reforma's president that he did not want a "divorce," implying that he hoped for their business relationship to continue, despite the fact that JoySuds was secretly planning to end its business with Reforma, *id.* ¶¶ 153-154, and falsely indicated that JoySuds was open to new business with Reforma in the future, expressing a desire "to grow new product lines for JoySuds with Reforma," *id.* ¶¶ 165-169.  In summary, Reforma's proposed fraud counterclaim alleges that JoySuds made false statements regarding its future purchases, continued and future business, and the payment of its outstanding invoices.

    On May 1, 2023, Reforma moved for a conference before the Honorable Ona T. Wang, to whom this case is referred for general pretrial supervision, Dkt. 34, expressing its intent to move to amend its counterclaims, and attaching a redacted version of its Proposed Amended Counterclaims.  Dkt. 109.  That same day, Reforma and JoySuds filed a joint letter motion to seal portions of the Proposed Amended Counterclaims.  Dkt. 110.  JoySuds filed sealed and unsealed versions of a letter opposing amendment on May 4, 2023.  Dkts. 116, 117.  Reforma then filed a reply letter on May 11, 2023, Dkt. 118, as well as a joint request that the reply letter be filed under seal, Dkt. 119.  Judge Wang granted the motions to seal on May 18, 2023.  Dkt. 124.  The Court

then gave the parties the opportunity to fully brief Reforma's motion to amend. Dkts. 137, 145. Reforma moved to amend on July 14, 2023, Dkt. 141, 142 ("Motion"), JoySuds filed its opposition on August 8, 2023, Dkt. 146 ("Opposition"), and Reforma replied on August 15, 2023, Dkt. 148 ("Reply").

## II. Legal Standard

A court analyzes a party's request to amend pleadings pursuant to Federal Rule of Civil Procedure 15(a). *See* Fed. R. Civ. P. 15(a). Under Rule 15(a)(1), a party may amend its pleading without leave of court "within: (A) 21 days of serving it, or (B) if the pleading is one to which a responsive pleading is required, 21 days after service of a responsive pleading or 21 days after service of a motion under Rule 12(b), (e), or (f), whichever is earlier." Amending a pleading after these deadlines requires either the opposing party's written consent or leave of court. *See* Fed. R. Civ. P. 15(a)(2). A district court must "freely give leave [to amend] when justice so requires," *id.*, but may deny such a request "for good reason, including futility, bad faith, undue delay, or undue prejudice to the opposing party," *DeCastro v. City of New York*, No. 16 Civ. 3850 (RA), 2020 WL 4932778, at *6 (S.D.N.Y. Aug. 24, 2020) (quoting *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 200 (2d Cir. 2007)). "An amendment is considered futile if it could not defeat a motion to dismiss for failure to state a claim or for lack of subject matter jurisdiction." *Raji v. Societe Generale Ams. Sec. LLC*, No. 15 Civ. 1144 (AT), 2016 WL 354033, at *2 (S.D.N.Y. Jan. 21, 2016) (quoting *Huang v. iTV Media, Inc.*, 13 F. Supp. 3d 246, 264 (E.D.N.Y. 2014)).

To survive a motion to dismiss for failure to state a claim, "a [pleading] must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible when it "pleads factual content that allows the court to draw the

reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citation omitted). A pleading's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. Although the Court must "accept[] as true the factual allegations in the [pleading] and draw[] all inferences in the [non-movant's] favor," *Biro v. Condé Nast*, 807 F.3d 541, 544 (2d Cir. 2015), it need not "accept as true legal conclusions couched as factual allegations," *LaFaro v. N.Y. Cardiothoracic Grp., PLLC*, 570 F.3d 471, 475-76 (2d Cir. 2009) (citation omitted).

Counterclaims sounding in fraud must also meet the pleading standards of Federal Rule of Civil Procedure 9(b). *Coral Crystal, LLC v. Fed. Ins. Co.*, No. 17 Civ. 1007 (LTS) (BCM), 2021 WL 84308, at *5 (S.D.N.Y. Jan. 11, 2021). "Rule 9(b) requires that 'a party must state with particularity the circumstances constituting fraud or mistake,' although '[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally.'" *Valentini v. Grp. Health Inc.*, No. 20 Civ. 9526 (JPC), 2021 WL 6113991, at *3 (S.D.N.Y. Dec. 27, 2021) (alteration in original) (quoting Fed. R. Civ. P. 9(b)), *aff'd*, No. 22-157, 2023 WL 2027273 (2d Cir. Feb. 16, 2023). In other words, Rule 9(b) requires pleading the circumstances of the fraud and the defendant's mental state. *Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC*, 797 F.3d 160, 171 (2d Cir. 2015). To satisfy this heightened burden, a complaint must "(1) detail the statements (or omissions) that the plaintiff contends are fraudulent, (2) identify the speaker, (3) state where and when the statements (or omissions) were made, and (4) explain why the statements (or omissions) are fraudulent." *Id.* (quoting *Eternity Glob. Master Fund Ltd. v. Morgan Guar. Tr. Co. of N.Y.*, 375 F.3d 168, 187 (2d Cir. 2004)). "Courts view the alleged facts 'in their totality, not in isolation.'" *Valentini*, 2021 WL 6113991, at *3 (quoting *Loreley Fin. (Jersey) No. 3 Ltd.*, 797 F.3d at 171).

## III. Discussion

JoySuds's primary argument is that amendment is futile because Reforma's proposed fraud counterclaim would be duplicative of its current breach of contract counterclaims. Opposition at 3-16. New York law, which governs this dispute,[3] prohibits a plaintiff from bringing a fraud claim based on factual allegations which, in essence, sound in breach of contract. Thus, "intentionally-false statements by [a party to a contract] indicating [the party's] intent to perform under the contract . . . [are] not sufficient to support a claim of fraud under New York law." *Bridgestone/Firestone, Inc. v. Recovery Credit Servs., Inc.*, 98 F.3d 13, 19-20 (2d Cir. 1996) (citations omitted). For a fraud claim to survive alongside a breach of contract count, a plaintiff must instead show (1) "a legal duty separate from the duty to perform under the contract," (2) "a fraudulent misrepresentation collateral or extraneous to the contract," or (3) that "special damages . . . are caused by the misrepresentation and unrecoverable as contract damages." *Id.* at 20 (internal citations omitted).

Reforma makes multiple arguments for why its proposed fraud counterclaim is not duplicative of JoySuds's contractual duties. Reforma argues that JoySuds made false representations about the amount of production it would require from Reforma in the second quarter of 2022 despite the fact that the Supply Agreement did not require these projections to be made as far out as they were. Motion at 11-14. Reforma also contends that JoySuds's

---

[3] The parties' submissions, in connection with Reforma's motion to amend as well as prior motions, "assume that New York law controls this dispute, and such implied consent is sufficient to establish choice of law." *Santalucia v. Sebright Transp., Inc.*, 232 F.3d 293, 296 (2d Cir. 2000) (ellipses and internal quotation marks omitted); *accord Better Holdco, Inc. v. Beeline Loans, Inc.*, No. 20 Civ. 8686 (JPC), 2023 WL 2711417, at *30 n.23 (S.D.N.Y. Mar. 30, 2023). Further, the Supply Agreement provides that it "shall be interpreted in accordance with, and governed by, the laws of the State of New York without regard to its conflict of law principles." Dkt. 143-3 ("Supply Agreement") § 16.2.

misrepresentations about the reasons for its payment delays are misstatements of current fact that induced Reforma to continue to perform under the Supply Agreement. *Id.* at 16.  Reforma further argues that JoySuds made misrepresentations regarding its business plans, including not revealing its intent to rely on other suppliers instead of Reforma, failing to tell Reforma that it would be ending their relationship, and falsely telling Reforma that it wanted to jointly grow new product lines and build brands together. *Id.* at 16-20.  These statements, Reforma argues, constituted an attempt to "misl[ead] Reforma because [JoySuds] wanted Reforma to keep shipping while [JoySuds] executed its plans" to shift to other suppliers. *Id.* at 17; *see also* Proposed Amended Counterclaims ¶ 203 (stating that JoySuds's false statements harmed Reforma by leading Reforma to "order[] large amounts of costly raw materials for Q2" and to "ke[ep] manufacturing and shipping Products, notwithstanding JoySuds's violations, in the false hope that JoySuds would pay its invoices and provide proper notice when Reforma's services were no longer needed").

      The Court concludes that most of Refoma's proposed fraud counterclaim is duplicative of its breach of contract claims.  To the extent that the fraud counterclaim is based on (1) JoySuds misrepresenting that it "planned to use [Reforma] to manufacture all of the Products it was presently producing through the end of June 2022"; (2) JoySuds misrepresenting that it "had not paid [Reforma] because its 'systems' were 'behind'"; and (3) JoySuds "wrongfully omit[ing] to tell Reforma that it was using new suppliers, and that all o[r] substantially all of the business that JoySuds was doing with Reforma was 'going away,'" Proposed Amended Counterclaims ¶¶ 199-200, these alleged fraudulent statements were made pursuant to the contract and concerned the parties' contractual duties.  Each of these alleged statements would have been a misrepresentation about JoySuds's intention to continue performing under the Supply Agreement, which sounds in

7

breach of contract.  *See Bridgestone/Firestone, Inc.*, 98 F.3d at 19-20.[4]  A fraud theory based on a statement by JoySuds that it would purchase additional Product from Reforma, while not intending to pay for that Product, is reflected in Reforma's Payment and Materials Breach Counterclaims.  Similarly, a fraud theory based on a false statement by JoySuds that it was not using and did not intend to use other suppliers is reflected in Reforma's Exclusivity Breach Counterclaim.

Reforma's arguments that these misrepresentations and omission were collateral to the Supply Agreement are further undermined by the fact that the damages for these aspects of its proposed fraud counterclaim and the breach of contract counterclaims entirely overlap.  *See Clement v. Farmington Cas. Co.*, No. 13 Civ. 1026 (NSR), 2015 WL 6971565, at *7 (S.D.N.Y. Nov. 10, 2015) ("Additionally, where damages arising from a fraud claim are identical to those damages resulting from a breach of contract, courts have dismissed fraud claims as duplicative of breach of contract claims.").  Reforma alleges that JoySuds's representations led it to order raw materials and ship Product that were not paid for.  Proposed Amended Counterclaims ¶ 203.  But these damages are identical to those sought in the Materials Breach and Payment Breach Counterclaims.  *See id.* ¶¶ 183-184 ("JoySuds is in breach of its obligations under Section 5 of the Supply Agreement to pay Reforma for finished Product.  JoySuds's failure to pay all amounts

---

[4] Reforma's citation to *Barrie House Coffee Co., Inc. v. Teampac, LLC*, No. 13 Civ. 8230 (VB), 2016 WL 3645199, at *7 (S.D.N.Y. June 30, 2016), to argue that "a fraud claim may arise . . . when a defendant makes misrepresentations to induce a plaintiff's continuing performance of a contract," is unavailing.  Motion at 11 n.4 (alterations, emphasis, and quotation marks omitted); *see also id.* at 16; Reply at 3 n.1.  As noted, the Second Circuit determined in *Bridgestone/Firestone* that "intentionally-false statements by [the defendant] indicating his intent to perform under the contract"—there, representations that were "intended to lull [the plaintiff] into a false sense of security"—are "not sufficient to support a claim of fraud under New York law."  98 F.3d at 19-20 (citations omitted); *see also AXA Versicherung AG* ex rel. *Albingia Versicherungs AG v. N.H. Ins. Co.*, 348 F. App'x 628, 629 (2d Cir. 2009) ("Merely falsely indicating an intent to perform under a contract 'is not sufficient to support a claim of fraud under New York law.'" (quoting *Bridgestone/Firestone*, 98 F.3d at 19)).

owed under Section 5 has harmed Reforma."); *id.* ¶¶ 189-190 ("JoySuds is in breach of its obligations under Section 4.5 of the Supply Agreement to purchase or otherwise be financially responsible for the Residual Materials and Finished Product upon termination of the Supply Agreement. JoySuds's failure to purchase or be responsible for such items has harmed Reforma."). And any harm to Reforma due to JoySuds's representations that it would continue to use Reforma's services, while in fact intending to transition away from their business relationship, is encompassed by the damages sought in the Exclusivity Breach Counterclaim, which alleges that "JoySuds's failure to abide by the Supply Agreement's exclusivity requirement has harmed Reforma." *Id.* ¶ 196.

Also unpersuasive is Reforma's argument that it has alleged special damages because it may be unable to recover on the Supply Agreement due to its own breaches of that contract. Motion at 20-21. "It is well settled under New York law that a party cannot maintain overlapping fraud and breach of contract claims regardless of whether the alleged contract is unenforceable." *Optionality Consulting PTE. Ltd. v. Edge Tech. Grp.*, No. 18 Civ. 5393 (ALC), 2021 WL 310942, at *8 (S.D.N.Y. Jan. 29, 2021) (ellipsis omitted) (quoting *Stillman v. Townsend*, No. 05 Civ. 6612 (WHP), 2006 WL 2067035, at *6 (S.D.N.Y. July 26, 2006) (collecting cases)). In other words, "special damages that are . . . unrecoverable as contract damages," *Bridgestone/Firestone*, 98 F.3d at 20, means damages that cannot be recovered under the contract in principle, not damages rendered unrecoverable based on the claimant's own actions to render them unrecoverable. Otherwise, the bar to overlapping fraud and breach of contract claims would work only against those that had fulfilled their contractual obligations, and so reward breaching agreements.

However, Reforma's new business line-based fraud theory, which relies on the allegation that the president of JoySuds falsely told Reforma's president during a February 24, 2022 meeting

9

that "he wanted to grow new product lines for JoySuds with Reforma" and that "he wanted to build brands and put together deals with [Reforma's president]," does not relate to any of the specific contract provisions at issue in Reforma's counterclaims.  Proposed Amended Counterclaims ¶¶ 164-165.  JoySuds points to section 2 of the Supply Agreement—titled "New Services" and setting forth the process by which JoySuds could request Reforma to "develop new processes and formulations to manufacture new products."  Supply Agreement § 2; *see* Opposition at 11-12.  But Reforma does not base any of its breach of contract counterclaims on section 2, and "[u]nder New York law, a plaintiff must allege the specific provisions within a contract upon which the breach of contract claim is based," *Boehner v. Heise*, 734 F. Supp. 2d 389, 408 (S.D.N.Y. 2010).  Therefore, Reforma's existing breach of contract counterclaims would not encompass any alleged violation of section 2, and thus a counterclaim relying on statements concerning future business would not be duplicative of any existing breach of contract claims.

Furthermore, and as Reforma rightly points out, section 2 also does not appear to speak directly to aspects of the new allegation of fraud concerning the two companies engaging in future lines of business, such as growing new product lines and building new brands together.  *See* Reply at 4.  Section 2 concerns "new processes and formulations to manufacture *new products*."  Supply Agreement § 2 (emphasis added).  The fraud sought to be alleged in the Proposed Amended Counterclaims goes beyond new products, however.  JoySuds's president is alleged to have told Reforma's president that "he wanted to grow new product lines for JoySuds and Reforma," as well as "build brands and put together deals with [Reforma's president], even beyond JoySuds."  Proposed Amended Counterclaims ¶ 165.  Section 2 does not appear to include brands or deals within its ambit. Supply Agreement § 2; *cf. Airport Mart Inc. v. Dunkin' Donuts Franchising LLC*, No. 18 Civ. 170 (KMK), 2019 WL 4413052, at *11 (S.D.N.Y. Sept. 16, 2019) ("Plaintiff's

10

allegation that it was misled to believe that . . . it was establishing a long-term relationship with Defendant that would outlast the Franchise Agreement are enough to distinguish the fraud claim from the breach of contract claim."). That undermines JoySuds's assertion that "any expectations Reforma had regarding manufacturing new products is also provided for by Section 2." Opposition at 12. While that argument may be persuasive with respect to new *products*, the argument does not speak to the future brands or deals included within the scope of the alleged fraud. Further, Reforma alleges injuries that it suffered as a result of its expectation of having new business in the future with JoySuds. Proposed Amended Counterclaims ¶ 203 (alleging injuries arising from JoySuds's president's "statements about continuing to do business together"); *see Loreley Fin. (Jersey) No. 3 Ltd.*, 797 F.3d at 187 ("The complaint must simply give Defendants some indication of the actual loss suffered and of a plausible causal link between that loss and the alleged misrepresentations." (internal quotation marks omitted)).

JoySuds also finds no success in its scienter-based arguments. "Under New York law, Plaintiffs [bringing a fraud claim] must ultimately prove that Defendants possessed 'knowledge of [their misstatements'] falsity' and 'an intent to induce reliance.'" *Loreley Fin. (Jersey) No. 3 Ltd.*, 797 F.3d at 176 (second alteration in original) (quoting *Eurycleia Partners, LP v. Seward & Kissel, LLP*, 12 N.Y.3d 553, 559 (2009)). "To survive a Rule 12(b)(6) challenge, Plaintiffs must state facts sufficient to give rise to a strong inference of fraudulent intent." *Id.* (internal quotation marks omitted). "At the pleading stage, under Rule 9(b), a fraud plaintiff may establish a strong inference of scienter, among other ways, by alleging facts that constitute strong circumstantial evidence of conscious misbehavior or recklessness." *Id.* (internal quotation marks omitted).

JoySuds argues that "Reforma has pled no facts, let alone with specificity, indicating that JoySuds did not want to grow new product lines, build brands, or put together deals with Reforma."

11

Opposition at 15.  Drawing all inferences in Reforma's favor, the Court disagrees.  In the Proposed Amended Counterclaims, Reforma alleges facts that, if proven, would amount to strong circumstantial evidence of at least recklessness.  By the time the meeting of the companies' presidents took place on February 24, 2022, JoySuds's president had already sent an email the previous month stating that the company was "moving away from [R]eforma."  Proposed Amended Counterclaims ¶ 138.  While JoySuds claims that the email was quoted out of context in the Proposed Amended Counterclaims in that "[f]ar from stopping payments due to some fraudulent intent to harm Reforma, [JoySuds's president] asserted he was stopping payments and moving away from Reforma *for a valid business reason*"—apparently "failing to meet production requirements and making defective product," Opposition at 13-14 (emphasis added), this explanation arguably bolsters the scienter claim with respect to the new business lines allegation: if JoySuds had already decided that it would "move away from Reforma" for business reasons, why would the president then suggest new business lines with Reforma a month later?  To be sure, there may well be alternative explanations.  For instance, perhaps JoySuds's president had more confidence in Reforma's abilities to manufacture other products than those alluded to in the January 2022 email.  But at this juncture, the Court must draw all inferences in Reforma's favor.  And Reforma has proffered other facts to support an inference of scienter with respect to the new business lines fraud theory, including that JoySuds's president was saying "uncharitable things . . . about [Reforma's president] behind her back," and that, in response to Reforma's proposal to provide alternative services, a JoySuds employee "manipulated the [pricing] numbers to make them impossible [for Reforma] to match," which led Reforma "to pass on the perceived opportunity."  Proposed Amended Counterclaims ¶¶ 107, 167, 171-172.

The Court therefore does not find Reforma's allegations of fraud in connection with future lines of business between the companies to be duplicative of its existing breach of contract counterclaims or otherwise futile. To be sure, the Court's finding is simply that this aspect of Reforma's proposed fraud counterclaim, as alleged, is not futile such that leave to amend should be denied. If JoySuds moves for summary judgment on this claim, Reforma will need to "offer enough evidence to allow a reasonable jury to find by clear and convincing evidence that each of the elements [of a New York fraud claim] is met." *Loreley Financing (Jersey) No. 3 Ltd. v. Wells Fargo Secs., LLC*, 13 F.4th 247, 259-60 (2d Cir. 2021). However, for the reasons discussed, Reforma has pleaded enough to allow the new business lines-related fraud claim to proceed under the standards applicable at this juncture under, *inter alia*, Rule 15(a)(2) and Rule 9(b).

Finally, the Court is unpersuaded by JoySuds's arguments of bad faith and undue delay. *See* Opposition at 17-22. JoySuds claims that "if leave is granted at this late juncture of the litigation, JoySuds will be prejudiced as it will be required to expend time and effort, including moving to dismiss, a clearly unviable duplicative claim," *id.* at 21, but "complaints of the time, effort and money . . . expended in litigating the matter, without more, [do not] constitute prejudice sufficient to warrant denial of leave to amend," *Pasternack v. Shrader*, 863 F.3d 162, 174 (2d Cir. 2017) (internal quotation marks and alternation omitted). Nor do the facts that there appears to be some degree of overlap between Reforma's fraud and prior breach of the implied covenant of good faith and fair dealing claims, *see* Opposition at 20-21, and that Reforma seeks to make modest changes to its counterclaims, *id.* at 21, show bad faith in and of themselves. Finally, JoySuds's contention that, "[h]ad the Court wished to permit leave to amend to add a claim for fraud, it would have said so" in its prior Opinion on JoySuds's motion to dismiss, *id.* at 19, is plainly unavailing. That Opinion granted Reforma leave to amend its Counterclaims "to plead a viable, non-

13

duplicative cause of action for breach of the implied covenant of good faith and fair dealing," MTD Opinion at *15, but it did not otherwise bar a motion for leave to amend to assert a different counterclaim and, further, the Rule 15(a)(2) standard applies as noted.

For these reasons, Reforma's proposed fraud counterclaim is allowed to proceed, albeit only based on the new theory of business lines fraud discussed above. The proposed fraud counterclaim is in all other respects duplicative of its breach of contract counterclaims, and amending to add those allegations would therefore be futile as a matter of New York law.

### IV. Conclusion

For the previously stated reasons, Reforma's motion to amend is granted, and Reforma may plead a fraud counterclaim to allege business lines-related fraud, as outlined above. Reforma shall file Amended Counterclaims, consistent with this Opinion and Order, within fourteen days.

SO ORDERED.

Dated: October 9, 2023
       New York, New York

_____
JOHN P. CRONAN
United States District Judge